The opinion of the court was delivered by
Watkins, J.
Plaintiff demands $2362.45 in reimbursement of money paid defendants in error and without being under any natural obligation to pay same.
His contention is that on the 10th of February, 1887, defendants held a certain promissory note for $10,000, bearing date June 9, 1885, and maturing sixty days thereafter, whereby the Chalmette Mills promised to pay to the- order of A. G. Ober and petitioner jointly said sum, which had been reduced by partial payments to *248 $4724.90. That said note was endorsed by the payees, who thereby became liable jointly, and not in solido, to any future holder of said paper. That on said 15th of February, 1887, said note was by the defendants duly presented to the petitioner for the payment of said balance, they averring his liability therefor.
That he paid the full amount of said balance, relying on defendants’ representations as to his liability therefor, and truly believing himself to be bound for the payment of the full amount, whereas, in truth and fact, he was only bound on one-half thereof, being a joint endorser on said $10,000 note with A. G. Ober, to whose joint order same'was made payable. His further contention is, that his endorsement was only for accommodation, and wholly without any consideration as to him.
In effect the defence is, that plaintiff is and was primarily bound for the whole, and consequently there was no error in his making .payment as he did; and if he was not so bound, he was under a natural obligation to pay said sum, and has no right of action for its reimbursement.
There was judgment for plaintiff, and defendants have appealed.
The facts appear to be as follows: At the date of the transactions under consideration the plaintiff, as well as the defendants, were stockholders and directors in the Chalmette Mills, and plaintiff was the acting secretary of that corporation.'
The corporation being desirous of obtaining some money with which to tide over some financial difficulties, defendants negotiated a loan on the faith of- the plaintiff’s endorsement; and on the 12th of April, 1884, a demand note of the company was executed for $20,106.-67, with 8 per cent, interest, signed by A. G. Ober, president, and plaintiff as acting secretary, payable to the plaintiff’s order and by him endorsed. On the 9th of June, 1885, the sum of $10,000 was paid, and a sixty day note for $10,000 was executed by said corporation officers, payable to the order of A. G. Ober and the plaintiff, jointly, with 7 per cent, interest, and same was by them jointly endorsed. There was made contemporaneously a statement showing a balance due to that date, of $821.58, in excess of the $10,000 note, wdiich was paid on the 12th of June thereafter, and appropriate memoranda endorsed on the demand note. All of these were retained in the possession of defendants, until February 10, 1887, when the bal *249 ■anee due was paid by plaintiff, and they were then surrendered to him.
While there is some variation between the statements made by the plaintiff and defendant, Hoffman — and there were no other witnesses —we are- satisfied, from a critical examination of the whole of the evidence, that the $10,000 time note was intended and accepted as an evidence of the extension of the time for the payment Of that •sum for a period of sixty days from its date,r June 9, 1885. This paper carries on its face satisfactory proof of that fact, in that the original note was due “on demand,” and the latter was payable “sixty days after date.”
Manifestly the object in view was an extension of time, and this form was agreed upon between Ober, president of the debtor corporation, and the creditor defendants. This new obligation and the memoranda endorsed contemporaneously on the demand note evidence this fact. In this light it seems reasonable that the creditors should have retained the original obligation as well as the supplementary one. There was certainly no intention on the part of defendants to novate the debt. The new note shows the contrary. The only substantial differences between the two are the extension of time, the addition of Ober as payee, and the reduction in the rate of interest from 8 to I per cent. We view this new note as a species of collateral paper, evidencing new and additional stipulations between the contracting parties and the modification of the terms of the original agreement, and not the novation or extinction of it.
In furtherance of this theory we note the admissions of the plaintiff, as a witness, to the effect that he consented to endorse the demand note to enable the corporation to obtain money to relieve its embarrassment, and that it was upon the faith of his individual acceptance and endorsement of this accommodation paper that defendants made the loan. He states that he ■ knew that defendants held the demand note, and that he saw it in their possession when he accepted and endorsed it. Then there is no doubt of the fact that the demand note became a primary obligation of the plaintiff, and so remained up to the date of the issuance of the time note. In reference to that paper the plaintiff states that some months after its execution he learned that the demand note had nob been paid, and expressed to the president of the corporation his surprise and dis *250 satisfaction thereat, and was by him informed that it had been taken up. But he, at the same time, stated that he was in need of $10,000' for other purposes and requested his endorsement for that amount, but he declined compliance. That, - soon. afterward, Ober returned with the sixty day note, signed by him as president, and, after some deliberation and hesitancy, he (plaintiff) signed as acting secretary of the company and endorsed it personally and jointly with Ober, and delivered it to the latter, who carried it away.
Conceding- the correctness of this state of facts arguendo, another argument is furnished in favor of the proposition announced supra, and that is to the effect that the acceptance and endorsement of the-plaintiff of the time note was only as a personal accommodation to Ober to enable him to raise money for other purposes than those represented in the prior transaction with defendants and With which it had no connection.
On this theory the time note was confessedly not a novation or ex-tinguishment of the demand note, but wholly disconnected , with it-Such being the case, plaintiff’s averment of error should have been that he never signed a renewal note at all, and not that he paid in full a note for the payment of which he was only jointly bound with another.
That such is the position assumed by the plaintiff his own testimony furnishes conclusive proof.
“ Q. You went on and made a payment on this balance; why did you make that payment on the balance on the 10th of February, of $4700 after you had refused to endorse except jointly?
“A. In the first place you don’t quote me exactly. In the first instance I refused to endorse at all. He subsequently came back and asked me if he would go in jointly with me would I endorse it? I hesitated for some time and declined; and he discussed the matter with me and I finally yielded and consented to go in jointly with him.
“ Q. And you say you would not have signed it singly? ■
“A. I say I did not. I had already refused to sign it singly.
“ Q,. Then having endorsed it jointly, you understood you were in for one part, and Mr. Ober for one part?
“ A. Yes, sir.
“ Q. You understood you were bound for one-half, and Ober for another half?
*251 “ A. Yes, sir.
11 Q,. Then why, having that understanding at the time you signed this note, or having that view of your obligation when you signed this note, is it you paid that balancé on the 10th of February?
“A. Because in the mean time, Ober had failed, and I supposed that either endorser would be liable for the whole amount.”
Then, it is clear that, in this transaction, the plaintiff dealt with Ober, alone, and not with the defendants. That in so doing, he relied on Ober’s statement, that he had taken up or retired the demand note, before the time note was endorsed, and that this statement superinduced plaintiff’s acceptance and endorsement of it. It is also clear that the plaintiff did not make any inquiry of defendant about it, notwithstanding the demand note bound him personally, and individually, and did not bind Ober, and was confessedly the property of the' defendants. The evidence abundantly shows that, in reference to the time note, the dealings between Ober and the defendants looked solely to an extension of time for the payment of the balance of $10,000 remaining due on the demand note; and, whatever may have been the representations of Ober to the plaintiff, in reference to the demand note having been paid or retired, it, also, fully shows that it had neither been paid or retired as a matter of fact.
The truth is, that defendants held both the demand note and the time note for $10,000, and on both of which plaintiff was bound. While it is true that plaintiff may have been overreached or deceived by Ober in the last transaction, he was undoiibtedly bound in a double obligation for the same debt to the defendants until the latter was discharged by payment. Notwithstanding he declined to endorse any other than a joint obligation with Ober, yet he paid voluntarily, and that payment discharged both his joint obligation and his own individual endorsement. In thus making payment he was not taken by surprise, nor does the proof show that defendants made any representations as to the extent of his obligations, on which plaintiff acted. On the contrary, the knowledge of defendants’ continued possession of the demand note was brought home to the plaintiff more than a year prior to his making payment, and hence he was informed that Ober’s statement was untrue; and yet he made no protest or complaint to the defendants, though they repeatedly urged him to pay.
*252 The fact is that plaintiff had consented that defendants should accept payments from other persons than himself, without prejudice to his endorsement; and that defendants reciprocally consented to an additional extension of time, until the affairs of the insolvent corporation could be liquidated, and the proceeds realized from liquidation applied, as far as possible, to the satisfaction of the debt, and to hold him for the residue only.
A statement in the record (in plaintiff’s brief at page 11) shows that on the 31st of July, 1886 — more than one year after' the date of the time note — the sum of $5000 was paid on it “by dividends from liquidation of Chalmette Mills;” and on the 11th of December, following, an additional $1250 was paid from the same source. It is the resulting balance of $4724.90 that the plaintiff paid in settlement.
On the whole we take it to be clear that the time note only evidenced the extension of the $10,000 of the original debt, for the payment of which the plaintiff was personally bound, and that if he had been sued on the demand note the execution of the time note would have been no defence. Hence while the payment of the latter discharged the former, its existence did not; therefore error in the method of or amount of payment made on the latter can not relieve plaintiff or ground his action for reimbursement.
The judgment appealed from is erroneous and must be reversed.
It is therefore ordered and decreed that the judgment appealed from be reversed, and that the demands of plaintiff be rejected and disallowed, and that he be taxed with costs in both courts.
Judge Fenner absent.